IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-54-BO

| | |
|---|---|
| GERALDINE M. LAMBRE, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| CAROLYN COLVIN,<br>Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [DE 25 & 28]. A hearing on this matter was held in Raleigh, North Carolina on August 16, 2013. For the reasons detailed below, plaintiff's motion is DENIED and defendant's motion is GRANTED. The decision of the Commissioner is AFFIRMED.

## BACKGROUND

On August 25, 2011 Ms. Lambre filed an application for disability insurance benefits alleging an onset date of February 28, 2011. Her application was denied initially and upon reconsideration. After a hearing, an Administrative Law Judge ("ALJ") denied her application on May 10, 2012. On September 28, 2012, the Appeals Council denied the plaintiff's request for review rendering the ALJ's opinion the final decision of the commissioner. The plaintiff now seeks review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g).

## MEDICAL HISTORY

As early as November 2010, plaintiff sought treatment for anxiety, sleep difficulties, migraines, and chronic foot pain. [Tr. 234]. Plaintiff began to notice her foot pain during a

deployment to Iraq in 2009. *Id.* After return from her deployment, plaintiff continued to experience foot pain, undertook pain management, and was placed on a restrictive work profile. *Id.* From November 2010 until February 2011, plaintiff continued to complain of anxiety and sleep difficulties. [Tr. 232–33, 245, 229]. On February 25, 2011, plaintiff underwent an Akin bunionectomy and a Tailor's bunionectomy with distal V-osteotomy, and internal screw fixation on her right foot. [Tr. 384–87]. After her operation she was diagnosed with retained screws in the first metatarsal of her right foot, recurrent hallux valgus deformity of her right foot, and Tailor's bunion deformity of her right foot. [Tr. 384].

In April 2011, plaintiff remained diagnosed with an adjustment disorder with an anxious mood and sleep difficulties. [Tr. 270]. On April 29, 2011, she reported a significant increase in anxiety and a corresponding reduction in the quality and quantity of her sleep. *Id.* Plaintiff continued to be diagnosed with an adjustment disorder with anxious mood and sleep difficulties through November 2011. [Tr. 274, 278, 266, 262, 303, 336]. Throughout this time period and beyond, plaintiff continued to experience difficulties with her foot and the associated pain. On August 22, 2011, plaintiff was diagnosed with residual plantar fasciitis and complained of swelling and pain at the site of her surgery. [Tr. 255]. The next day, plaintiff was treated with instrument assisted soft tissue mobilization and active release techniques. [Tr. 253]. On October 29, 2011, plaintiff was diagnosed with right foot Reynaud's syndrome and chronic pain. [Tr. 299]. She was also diagnosed with right foot chronic pain and hyperesthesia with history of Reynaud's, possible post-surgical reflex sympathetic dystophry improved, low back pain, musculoskeletal in nature, and right hip pain, musculoskeletal in nature. [Tr. 301]. At that time the doctor opined that plaintiff had mild limitations to repetitive weight bearing activity, repetitive standing, and heavy exertion in the standing position. [Tr. 302]. In December 2011,

plaintiff was diagnosed with right foot pain, neuralgia over the right foot, early symptoms of compression syndrome over the right foot and Lumbago. [Tr. 394]. Later that month, she was treated for right foot pain and low back pain. [Tr. 390].

On January 25, 2012, the U.S. Army Physical Evaluation Board found plaintiff unfit to continue military service due to hallux valgus deformities of the right foot, residual surgery pain, limited mobility of the great toe, scars, and Reynaud's phenomenon in theright foot with residual cold weather intolerance and pain. [Tr. 379]. Afterwards, plaintiff continued to receive treatment for her right foot and low back pain. [Tr. 388, 382, 380].

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984)(quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the

3

claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, after proceeding through the sequential five-step evaluation the ALJ found that the defendant was not disabled. At step one, the ALJ found that although plaintiff was receiving payments from the Army, her earnings did not constitute substantial gainful activity because she had not actually performed any services since her alleged onset date. [Tr. 34 (citing 20 C.F.R. 404.1574(a)(3))]. Proceeding with his analysis, the ALJ determined that plaintiff had severe impairments that did not meet the requirements of a listing. [Tr. 34–36]. The ALJ then reviewed in detail the relevant medical and nonmedical evidence of record and thereupon determined that plaintiff had the residual functional capacity of sedentary with the ability to lift/carry ten pounds occasionally and less than ten pounds frequently, to stand/walk for two hours in an eight hour workday, and to sit for six hours in an eight hour workday. [Tr. 37]. The ALJ further found that mentally the plaintiff retained the ability, on a sustained basis, to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a

schedule, and to relate to and interact with others to the extent necessary to carry out simple tasks. *Id.* However, he found that she should avoid work requiring more complex interaction with the public, but that she can handle reasonable levels of simple work-related stress and can make simple decisions directly related to the completion of her tasks and work in a stable, unchanging work environment. *Id.* The ALJ then found that plaintiff could not return to her past relevant work, but that under the Medical Vocational Guidelines, Rule 201.28 she was not disabled within the meaning of the Act. [Tr. 40–41].

Plaintiff argues that the ALJ's residual functional capacity determination is unsupported by the substantial evidence, the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in assessing the required factors in determining plaintiff's credibility, and that the ALJ's step five determination is unsupported by substantial evidence and is the product of legal error. This Court agrees with defendant that each of the ALJ's determinations is supported by substantial evidence.

I. THE RFC DETERMINATION.

Plaintiff argues that the ALJ erred in affording significant weight to the opinion of Dr. Boehlert because it was incomplete and vague. Plaintiff suggests that 20 R.F.C. § 404.1519n(c)(6) requires a statement as to plaintiff's functional limitations. However, 20 R.F.C. § 404.1519n(c)(6) plainly states that "the absence of such a statement in a consultative examination report will not make the report incomplete." Plaintiff also argues that the use of the term "mild limitation" is vague. Dr. Boehlert found that plaintiff had "mild limitations to repetitive weightbearing activity, repetitive standing, [and] heavy exertion in a standing position." [Tr. 302]. First, this is not vague. Second, the ALJ stated that he interpreted these limitations as limiting plaintiff to sedentary work. [Tr. 37]. The limitations would not interfere in

5

the performance of sedentary work activity. *See* 20 C.F.R. § 404.1567(a). Therefore, even if "mild limitation" is seen as vague, it is of no consequence here.

Plaintiff next argues that the RFC is wrong because the ALJ erred in affording some weight to the report of Dr. Ransom. Plaintiff again argues that the report did not render an opinion as defined under 20 C.F.R. 404.1519n(c)(6) because it did not include a statement about plaintiff's functional limitations. This, as the Court has already pointed out, is incorrect.

Finally, plaintiff attacks the validity of the RFC by stating that the ALJ erred in failing to recontact the Department of the Army for clarification of their opinion. The ALJ gave limited weight to the Army reports that released plaintiff from assigned duty in April 2012 due to her permanent physical disability because the determination of whether a claimant is disabled under the Social Security Act is reserved to the ALJ and the reports relate to her claim in the Army. Social Security Ruling 06-03p directs that ALJs should explain the consideration given to a determination of disability made by another agency, but notes that the different rules and standards used by the agency may limit the relevance of the determination. 2006 WL 2329939 at *6 (S.S.A. Aug. 9, 2006). Here, the ALJ properly explained his consideration of the Army's determination and gave it limited weight, noting the Army's definition of disability is different from that in the Social Security Act and that although plaintiff may not be able to return to military service, the evidence shows that she can perform sedentary work activity. [Tr. 37–38].

Additionally, there was no duty on the ALJ to recontact the Department of the Army here. The duty to recontact a treating source arises only when evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled. *See* 20 C.F.R. § 404.1520b. Here, however, the ALJ did not find that the evidence from plaintiff's primary treating physician was inadequate to make a determination. Indeed, the record contains a detailed and longitudinal

6

picture of plaintiff's condition from before her alleged onset date to beyond the date of the administrative hearing. At the hearing, plaintiff's counsel was asked if there were any additional records to be submitted and he stated that there were two reports he wanted to admit. [Tr. 45–46]. These, plus an additional report were placed into the record after the hearing. [Tr. 332–409]. Even now plaintiff does not allege that any specific records are missing. Although an ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, it is well settled that the claimant bears the ultimate burden of establishing a prima facie entitlement to benefits. *See Craig v. Chater*, 76 F.3d 585, 588 (4th Cir. 1996); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The ALJ's duty to develop the record does not replace the burden of a plaintiff to produce evidence proving her disability.

II.   THE CREDIBILITY DETERMINATION.

Plaintiff next claims that the ALJ erred in assessing the required factors in determining plaintiff's credibility. Here, the ALJ recognized the relevant regulations and rulings and properly found that plaintiff was not fully credible. [Tr. 37–40]. The ALJ did not, as plaintiff contends, reject her subjective complaints solely because they were not substantiated by the objective medical evidence. Rather he considered her reports of being able to take short jogs and that her walking was improving. He also considered doctors reports of her normal gait and stance. He contrasted her claims of swelling with the lack of any report of swelling in her medical reports. This is a short run down of the extensive way in which the ALJ assessed plaintiff's credibility. He did so further and in the same correct manner on other issues which do not need to be discussed here.

III. THE STEP FIVE DETERMINATION.

The final argument plaintiff makes is that the ALJ's step five determination is unsupported by substantial evidence and is the product of legal error. Mainly, plaintiff argues that the ALJ should have introduced the testimony of a vocational expert ("VE") because where "a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). "However, not every nonexertional limitation or malady rises to the level of nonexertional impairment, so as to preclude reliance on the grids." *Id.* The proper inquiry is whether the nonexertional condition affects an individual's RFC to perform work of which he is exertionally capable. *Id.*

Here, the nonexertional limitations that plaintiff claims exist were either found to be not credible by the ALJ, or they do not affect plaintiff's ability to perform sedentary work. Indeed, the ALJ explained that although he found plaintiff had limitations resulting from nonexertional impairments, these limitations would have little effect on the occupational base of unskilled sedentary work. [Tr. 41]. As such, the ALJ's application of the Medical-Vocational rules was proper and supported by the substantial evidence.

## CONCLUSION

For the reasons outlined above, plaintiff's motion for judgment on the pleadings is DENIED, defendant's motion for judgment on the pleadings is GRANTED. The decision of the Comissioner is AFFIRMED.

SO ORDERED.
This, the **30** day of November, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE